**In re Joseph RODERICK, and Donna J. Roderick, Debtors.**

**Bankruptcy No. 8100895.**

United States Bankruptcy Court, D. Rhode Island.

June 1, 1982.

486

John Boyajian, Boyajian, Coleman & Harrington, Providence, R. I., trustee.

Russell D. Raskin, Providence, R. I., for the debtors.

## ORDER DISMISSING CHAPTER 13 CASE

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the Trustee's Motion to Dismiss the Debtors' most recent Chapter 13 petition because of their failure to appear at the first meeting of creditors. 11 U.S.C. § 341.

The complete travel of this matter is much more relevant to a determination of the instant motion than the mere fact that the Debtors failed to attend a scheduled § 341 meeting. That incident is just the top of the iceberg. Joseph and Donna Roderick filed their first joint Chapter 13 petition on April 28, 1981, the day of a scheduled foreclosure sale of part of their real estate. BK No. 8100338. On June 21, 1981, the Debtors converted that Chapter 13 case to one under Chapter 7, when they were unable to file a confirmable plan. Donna Roderick attended the Chapter 7 first meeting of creditors pursuant to § 341, but Joseph Roderick did not appear. The Debtors received a discharge on July 23, 1981, and on October 10, 1981 the Court authorized a foreclosure sale of the Debtors' Bristol residence by Commercial Credit Consumer Services, Inc. (Commercial Credit).

On November 10, 1981, the Debtors filed another Chapter 13 petition. BK No. 8100895. This filing occurred less than one hour before the scheduled foreclosure sale of the Debtors' property by Commercial Credit. Neither Debtor attended the first meeting of creditors held on December 4, 1981.

The Court's authority to dismiss a Chapter 13 case is established in 11 U.S.C. § 1307(c). That section provides in part that:

on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ,

11 U.S.C. § 1307(c). Although § 1307 mentions several examples of cause which justify dismissal or conversion, that list is not exclusive. *In re Elkin*, 5 B.R. 21, 6 BCD 92 (Bkrtcy.S.D.Cal.1980).

Lack of good faith is a sufficient ground upon which to grant a motion to dismiss. *See In re Ratmansky*, 7 B.R. 829, 6 BCD 1362 (Bkrtcy.E.D.Pa.1980). Because of the blatant facts in this case, and considering the Debtors' testimony and demeanor, I find that the Chapter 13 petition filed November 10, 1981 was not filed in good faith.

The bare fact that the Debtors filed two Chapter 13 petitions within a matter of months may not by itself constitute bad faith, *see Latimer & Buck Mortgage Co. v. Conway (In re Conway)*, 5 B.R. 251, 6 BCD 664 (Bkrtcy.E.D.Pa.1980), however, the Debtors' total conduct before this Court clearly constitutes unjustified harassment of their secured creditors. The Debtors have twice commenced Chapter 13 proceedings within hours of scheduled foreclosure sales, and thereafter have not done anything even resembling compliance with the good faith required of Debtors who file for protection under Chapter 13 of the Code.

The evidence is clear that the Debtors filed neither of their Chapter 13 petitions with the intention of making meaningful payments to unsecured creditors as contemplated under Chapter 13. *See In re DeSimone*, 6 B.R. 89, 6 BCD 861 (Bkrtcy.S.D.N.Y.1980). The initial Chapter 13 case was

converted to Chapter 7, and a discharge was granted. Consequently, the second Chapter 13 petition was filed listing no unsecured creditors. Some courts have held that a petition filed solely to avoid foreclosure proceedings is not in itself evidence of bad faith.[1] I find, however, that in this case the timing of the filings, together with the Debtors' complete disregard of the responsibilities which they incurred, (as well as the benefits automatically received upon the filing) evidenced, among other things, by their failure to attend scheduled hearings, clearly indicates the absence of good faith.

In a recent and strikingly similar case, Bankruptcy Judge William A. King, Jr., in reacting to a fact pattern that pales the one before this Court, was compelled to remark as follows:

> The troubling aspect of this case is that debtor's counsel seems to believe that Bankruptcy Court is a legal playground where the debtor can indulge in an elaborate game of catch-me-if-you-can with her creditors. Such is not the case. Although the law grants a generous measure of relief to debtors, this benefit is not gratuitous. The law also imposes a measure of responsibility. As a member of the bar and an officer of the Court, counsel especially should be aware of this fact. The game attempted in this case cannot be permitted.
>
> (1) Once relief from the stay is properly granted, the mortgagee is entitled to proceed with foreclosure proceedings. The debtor cannot capriciously and vexatiously stall the creditor from exercising the rights, which have been obtained though [sic] extensive litigation in both federal and state court. The Order granting relief from the stay is determinative of the issue.
>
> (2) Counsel for the debtor denies that such an Order is *res judicata.* To quote from this motion:
>
> > 5. While it is true that the said dismissal followed the entry of an Order lifting the automatic stay, pursuant to Section 362 of the Bankruptcy Code,

that decision granting a lifting of the stay, upon information and belief, was *not* on the merits, and therefore cannot be *res judicata,* as to the merits of the case.

> > 6. The second Chapter 13 petition was filed as a result of this Honorable Court's lifting the Automatic Stay, in a vain attempt to preserve the debtor's homestead and to permit her an opportunity to pay the mortgage arrears and post-1st petition payments.
> >
> > 8. As the debtor's attorney, your affirmant was duty bound to take every reasonable and possible step to protect the interest of the debtor. Since the lifting of the automatic stay was upon a default judgment, and not the merits, and since the property was not sold before the petition was dismissed by this Honorable Court, the debtor was free to refile for the purpose of protecting her property.

Paragraph 6 quoted above, admits that the present Chapter 13 petition was filed in an attempt to stay a properly brought sheriff's sale. By filing the new petition, the debtor sought to re-impose the stay of lien enforcement provided by Section 362(a) of the Bankruptcy Code. The conduct of the debtor and her counsel cannot be condoned. It is a fraud upon the creditor and an affront to the integrity of the Court.

Paragraph 8, which is quoted above also, demonstrates the vacuum of reasoning in which counsel for the debtor operates. If, indeed, the default judgment was not *res judicata,* a case for relief from the stay need never be tried in a Chapter 13 proceeding. The debtor would be better served by allowing judgment by default to be entered. Once the default judgment was entered, the case would be voluntarily dismissed under § 1307(b) or payments to the trustee could be halted. In either fashion, the end result would be the same. The case would be dismissed. When the creditor commenced action to collect his debt, a

---

1. *See Latimer,* 5 B.R. at 252.

new petition would be filed and the automatic stay re-imposed, thereby thwarting the creditor from the exercise of legitimate rights. A new complaint would have to be filed and the merry game could begin all over again.

To even suggest that the farcical process described in the preceding paragraph is the intent and spirit of the Bankruptcy Code is utterly ridiculous. The reasoning expressed by counsel for the debtor is without foundation in common sense.

*In re Bystrek,* 17 B.R. 894, 895–96 (Bkrtcy. E.D.Pa.1982).

The Motion to Dismiss is granted, and the creditors who have been affected by the Debtors' actions are authorized to file applications for counsel fees and expenses incurred as a result of the bad faith tactics employed in this case. After hearings on said applications, it will be determined whether orders should be directed against the Debtors or their counsel, or whether they should be held jointly responsible for such costs.