**In re CREATIVE TOOLS, INC., Debtor.**

**Bankruptcy No. 81–257.**
**Adv. No. 84–0015.**

United States Bankruptcy Court,
D. Vermont.

Dec. 14, 1984.

Stephen Alan Dardeck, Rutland, Vt., for Vincent J. Tudisco.

Peter H. Banse, Rutland, Vt., for Arthur Pepin.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The matter is before the court on the complaint of Vincent J. Tudisco (Tudisco), a creditor in the case, for money damages resulting from the debtor's breach of a settlement agreement. A hearing on the complaint was held on October 25, 1984. From the records in the case and the testimony adduced at the hearing, facts as set forth below were established.

## FACTS

On October 27, 1982, Tudisco and the debtor executed an agreement in settlement of litigation. The purpose of the agreement was to avoid litigation, by putting Tudisco in a position to exploit certain patents. *See generally* Disclosure Statement (November 30, 1982) at paragraph IV. The agreement required the debtor to deliver the patents to Tudisco "forthwith upon request." *See* Settlement Agreement (October 27, 1982) at para. (13) ("Each of the parties hereto, forthwith upon request from the other, shall execute and deliver such documents and take such action as may be reasonably requested in order fully to carry out the intent and purpose of this agreement").

In June 1983 the court approved the agreement. *See* Order (June 6, 1983) ("ORDERED, that the Debtor is authorized and empowered to perform the obligations undertaken by it in the Settlement Agreement with Mr. Tudisco dated October 27, 1982.") Tudisco reasonably requested the debtor to deliver the patents to him so that he might exploit them in realization of the intent and purpose of the agreement. Although exercising dominion and control over the patents, the debtor did not deliver or attempt to deliver the patents. As of October 25, 1984, being the date of the hearing on the instant complaint, the debtor has remained in continuous possession of the patents.

Certain patent fees accrued while the debtor retained possession of the patents, as follows:

(a) $3,411.80 for a period ending August 31, 1983, which fees the debtor paid;

(b) $3,744.41 for the period September 1, 1983, through December 31, 1983, which fees Tudisco paid;

(c) fees in an unknown amount for the period beginning January 1, 1984, and continuing until the debtor delivers the patents to Tudisco.

On December 15, 1982, Tudisco, in contemplation of a present transfer of the patents, represented that he would reimburse the debtor for any patent fees it had paid. *See letter of counsel* (December 15, 1982). The transfer did not take place. *See generally, memorandum and order* (June 5, 1984), 40 B.R. 764. On June 22, 1983, the debtor, contemplating putting an end to litigation with Tudisco by means of completing the transfer of the patents, represented to the court that it would make payment for all patent fees paid by it, or paid by Tudisco, or accrued but unpaid as of such time as it transferred the patents to Tudisco. *See court recording of hearing* (October 25, 1984).

In September 1983 Tudisco and the debtor executed a further agreement in settlement of litigation which required that the debtor "pay the sum of $25,000 in cash

to TUDISCO." *See* Settlement Agreement (September 30, 1983). When the debtor made payment, it tendered only $21,588.20, and held back $3,411.80 for reimbursement of the patent fees it had paid. There is no language in the agreement authorizing set-off or reimbursement. The agreement also contemplated delivery of the patents as outlined in the 1982 agreement. *See* Settlement Agreement (September 30, 1983) at paragraph (B)(5). The transfer did not take place.

At all relevant times, the debtor has exercised control over the patents. At all relevant times, Tudisco has been amenable to fulfilling his obligations under the settlement agreements.

## DISCUSSION

Tudisco asserts a claim for the monies withheld by the debtor when it made payment under the 1983 settlement agreement, for reimbursement of such additional sums as Tudisco has expended in patent fees while the debtor has kept possession of the patents, and for a further sum in the amount of patent fees accrued but not paid as of the date of transfer of the patents. The debtor counterclaims for the patent fees it paid, denies liability as to further patent fees, and seeks costs in defending the action plus $800 for certain other legal expenses incurred during the pendency of this proceeding.

The obligation of the debtor under the 1983 settlement agreement to pay $25,000 in cash to Tudisco was conditioned upon the occurrence of a certain event. When the event occurred, the debtor was to "perform its obligations immediately." *See* Settlement Agreement (September 30, 1983). Thus, upon the occurrence of the triggering event, the debtor's obligation to pay $25,000 in cash to Tudisco was unconditional. Shortly after the parties executed the agreement, the triggering event occurred. The debtor thus was obliged to pay immediately to Tudisco $25,000 in cash. The representation of the debtor to the court in 1983, that it would shoulder responsibility for patent fees accrued or accruing until it

delivered the patents to Tudisco, supersedes the 1982 representation of Tudisco, that he would reimburse the debtor for patent fees it paid, contained in correspondence of counsel. Under the 1983 settlement agreement, and in keeping with the debtor's representations in open court, Tudisco is entitled to recover the amount of $3,411.80 deducted by the debtor when it paid Tudisco $21,588.20 in partial satisfaction of its mature, unconditional obligation to pay Tudisco $25,000.

At formation of the 1982 and 1983 agreements, the parties intended to terminate expeditiously the litigation pending between them. The debtor has put on no evidence that Tudisco has been unable, unwilling, or unprepared to proceed in timely fashion to meet his obligations under the agreements. As the debtor has established no ground for permitting the counterclaim as to patent fees, the unsupported claim must be dismissed.

As an affirmative defense, the debtor recites that the complaint fails to state a claim upon which relief can be granted. Regardless of what the situation was on April 19, 1984, when the debtor filed its answer, the situation changed when the debtor represented to the court that it would pay all patent fees until it delivered the patents to Tudisco. The debtor is bound to honor these representations, entered into in settlement of litigation. The representations were clear and unambiguous. The meaning of the representations was that the debtor would assume responsibility for $3,411.80 it had paid, for the additional $3,744.41 sum paid by Tudisco for the period September 1, 1983 through December 31, 1983, and for all patent fees accrued or accruing on or after January 1, 1984, until such time as it transferred the patents to Tudisco. The affirmative defense is not allowed.

As a final matter, the debtor has counterclaimed for $800 with respect to certain legal services it alleged it provided to recover certain hammerheads it was obliged to deliver to Tudisco under the settle-

ment agreements in this proceeding. At the hearing on the complaint, the debtor put on no evidence as to the legal services it allegedly provided "to recover the hammerheads," and there is no provision in either the 1982 or the 1983 settlement agreement as to any attorney's fees. Further, although there is a letter from Tudisco's counsel, written to the debtor's counsel some 285 days prior to the date of execution of the 1983 agreement, authorizing the performance of certain legal services, *see letter of counsel* (December 15, 1982), it was not established at the hearing that this authorization was ever acted on. Therefore, the counterclaim must be dismissed.

## ORDER

Upon the foregoing, it is ORDERED that Creative Tools, Inc. shall pay to Vincent J. Tudisco the following sums:

(1) the amount of $3,411.80 plus interest at the legal rate from September 30, 1983;

(2) the additional sum of $3,744.41 plus interest at the legal rate from December 31, 1983;

(3) a further amount equal to the sum of all patent fees accrued on or after January 1, 1984, and paid by Vincent J. Tudisco, together with interest at the legal rate from the date of any such payment; and

(4) a further amount equal to the sum of all patent fees accrued or accruing during the period beginning January 1, 1984, and ending on the date Creative Tools, Inc., transfers or transferred to Vincent J. Tudisco the patents in this proceeding, to the extent that such fees have not been paid as of the date of transfer of the patents herein.